IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. Nos. 05-80, 13-58, 19-8 |
| | ) | |
| RICHARD WOOD | ) | |

## UNITED STATES RESPONSE TO BOND MOTIONS

### I. INTRODUCTION

Between 2017 and 2019, Richard Wood conspired to distribute controlled substances in Allegheny County.  He was on federal supervised release at the time in two federal cases as a result of two prior drug trafficking convictions in this district.  One federal conviction occurred in 2014 at Criminal Number 13-58 and was for possession with intent to distribute heroin.  The other federal conviction occurred in 2005 at Criminal Number 05-80 and was for conspiring to distribute cocaine.

As a result of Mr. Wood's conduct while on federal supervised release, a superseding indictment was returned in 2019 at Criminal Number 19-8 charging him with conspiring to distribute controlled substances, including at least 5 kilograms of cocaine.  Thereafter, a supervised release violation petition (Document 644) was filed against Mr. Wood at Criminal Number 13-58, based on his drug trafficking while on supervised release, directing that he remain detained by order of United States District Judge Cathy Bissoon.  Another supervised release violation petition (Document 70) was filed against Mr. Wood at Criminal Number 05-80, based on his drug trafficking while on supervised release, directing that he remain detained by order of United States District Judge Nora Barry Fischer.

The superseding indictment and violation petitions are still pending.   A jury trial has been

1

scheduled to occur in September 2020.   Mr. Wood recently filed motions for release on bond at Criminal Numbers 19-8, 13-58, and 05-80.

The United States Probation Office opposes Mr. Wood's motions and recommends that he remain detained pending the resolution of the superseding indictment and the violation petitions. The prosecution concurs with this recommendation.   Mr. Wood's conduct while on supervised release for prior drug trafficking that led to his indictment for additional drug trafficking is sufficient to fully justify continued detention at this time.

To justify release on bond, Mr. Wood must demonstrate, by clear and convincing evidence, that he will not pose a danger to the community or flee if released. Fed.R.Crim.P. 32.1(a)(6) ("The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.").

The plain terms of the applicable statute – 18 U.S.C. § 3143(a)(1) – do not require a hearing to be conducted on the pending motion. *See, e.g., United States v. Hall*, Case No. 2:15-cr-00087-NBF, Doc. 3116, p. 1-2 (W.D.Pa. April 7, 2020) (denying bond motion, without a hearing, filed by one of Mr. Wood's Crim. No. 19-8 co-defendants who was similarly detained on a supervised release violation and a new federal charge).

Mr. Wood cannot meet his burden under Section 3143(a)(1), particularly in light of the fact that he was on supervised release in two different federal cases as a result of two sequential drug trafficking convictions when he was indicted for additional drug trafficking.   Mr. Wood's pending motions should, therefore, be denied based on the existing record and pleadings.   He should remain detained until the superseding indictment and the violation petitions are resolved.

## II. DANGER TO COMMUNITY AND FLIGHT RISK

Mr. Wood's motions are based on concern about the spread of the coronavirus/COVID-19. His reliance upon COVID-19 is misplaced and ultimately unconvincing.   As noted above, Mr. Wood must demonstrate, by clear and convincing evidence, that he will not pose a danger to the community or flee if released.   Concern about how COVID-19 might affect detained defendants is not clear and convincing evidence of how those detained defendants would affect the community if released. *United States v. Harris*, Case No. 2:13-cr-00059-NR, Doc. 277, p. 6-7 (W.D.Pa. April 16, 2020) ("As it pertains to danger to the community, Mr. Harris's motion mainly focuses on concerns he has about the potential danger COVID-19 poses to his health if he remains in custody. Although the Court is sympathetic to those concerns, they aren't relevant to the Court's present analysis. The text of section 3143(a) states that Mr. Harris must show by clear and convincing evidence that he does not 'pose a danger to the safety of any other person or the community if released. . . . Thus, the statute concerns (1) the safety of others, (2) if the defendant is released. It does not concern (1) the safety of the defendant, (2) if he remains detained.").

Moreover, the temporary release provision in 18 U.S.C. § 3142(i), allowing for temporary release of a detained pre-conviction defendant if "necessary for preparation of the [defendant's] defense or for another compelling reason," is not applicable to Mr. Wood.   Title 18, United States Code, Section 3143 applies to defendants who are detained as a result of supervised release violations.   Section 3143 does not contain a temporary release provision.

COVID-19 creates public health and safety risks for our families and our communities. Drug dealers who have refused to stop committing crimes, like Mr. Wood, also create public health and safety risks for our families and our communities.   The remarkably high number of crimes committed by actors who were subject to court supervision at the time, and the concerning number

3

of overdose deaths that have occurred in recent weeks, highlight the risks of prematurely releasing recidivist drug dealers.   This is not stated in an attempt to compare drug dealing with COVID-19. It is stated, however, to demonstrate that it would not contribute to public health and safety to release recidivist drug dealers during the spread of COVID-19.

Drug trafficking presents a substantial risk of danger to the community even when considered apart from the corresponding risk of violence it generates.   "The statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985); *see also United States v. Atkins,* 2015 WL 4920831, at *7 (W.D.Pa. 2015) (explaining, in addressing a bond motion, that "[d]rug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of very dangerous and addictive drugs like heroin").

Many federal drug trafficking defendants present a substantial risk of recidivism if released on bond because many are not first-time offenders.   "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S.Rep. No.225, 98th Cong., 2d Sess. 20); *see also United States Cymbalak*, Case No. 2:19-cr-00273-WSS, Doc. 33, p. 8 (W.D.Pa. Nov. 14, 2019) (finding, relative to a drug trafficking defendant, "little reason to accept Defendant's contention that his behavior going forward would be different" if released on bond).

A particular defendant's community ties do not necessarily mitigate the danger he presents

4

to the community. *United States v. Delker*, 757 F.2d 1390, 1392-93, 1396 (3d Cir. 1985).   A defendant's release on bond may very well endanger a community even if the defendant has several significant ties to it. *Id*. at 1401 ("Defendant's community ties do not overshadow the factors that clearly and convincingly establish that he poses a danger to persons in the community.").

Electronic monitoring also does not necessarily mitigate the danger a defendant may present to the community. *United States v. Harris*, Case No. 2:13-cr-00059-NR, Doc. 277, p. 9 (W.D.Pa. April 16, 2020) ("The Court is concerned that location monitoring and home arrest will not effectively mitigate this danger because those conditions would not provide information on any potential, and likely, trafficking activities, nor would they provide any information as to third parties frequenting [the defendant's] residence in violation of social distancing requirements."). (citation omitted).

Even if indefinite temporary release could be authorized for supervised release violation defendants under Section 3142(i), Mr. Wood's motion would still lack merit.   He has failed to meet his burden of establishing a compelling reason requiring his indefinite temporary release at this time. *See, e.g., United States v. Dupree*, 833 F.Supp.2d 241, 246 (E.D.N.Y. 2011) (explaining that the defendant has the burden of showing that temporary release is necessary).   No one wants COVID-19 to spread to anyone whether incarcerated or not.   The reality is that community spread of COVID-19 is occurring.   As a result, Mr. Wood could contract COVID-19 while incarcerated or while on bond.

Speculation about how COVID-19 could impact a detention facility and accentuation of particular medical conditions are not compelling reasons that justify the indefinite release of a defendant, who should otherwise be detained, into a community that is already experiencing a public health crisis. *See, e.g., United States v. Crute*, Case No. 2:19-cr-00299-WSS, Doc. 37, p. 3

(W.D.Pa. Mar. 26, 2020) ("While the Court is sympathetic to [defendant's] medical concerns and claims regarding possible complications caused by the COVID-19 virus, such speculation regarding future conditions does not constitute a 'compelling reason' for temporary release.").

Similar speculation about how COVID-19 could impact defense preparations, particularly at facilities that allow for video and telephone conferencing, is likewise not a compelling reason for indefinite release. *See, e.g., United States v. Penney*, Case No. 2:19-cr-00008-NR, Doc. 1795, p. 2 (W.D.Pa. Mar. 18, 2020) ("There are several alternatives to face-to-face preparation that are available to Defendants and their counsel. For example, Defendants can communicate with their counsel by telephone or written correspondence."); *Crute,* Case No. 2:19-cr-00299-WSS, Doc. 37, at p. 3 (denying motion for temporary release and noting that written correspondence and telephone calls can be sufficient for defense preparation).

### III. CONCLUSION

Defendants who have repeatedly committed serious crimes, even while under court supervision, leave courts with no great options when it comes to release on bond.  It would be nice if courts could credit their claims that they will follow all release conditions and not commit any more crimes while on bond, but such claims cannot and should not be credited.   Their criminal histories contradict such claims far too often to risk the safety of the community by releasing them, particularly during the spread of COVID-19.

Mr. Wood cannot establish, by clear and convincing evidence, that he will not pose a danger to the community or flee if released.  His pending motion should, therefore, be denied. He should remain detained until the superseding indictment and the violation petitions are resolved.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/ Craig W. Haller
CRAIG W. HALLER
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
(412) 644-5870 (Fax)
craig.haller@usdoj.gov
PA ID No. 87714